1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SELENA ROSE HERNANDEZ,                      No.  2:14-cv-2246 AC

12              Plaintiff,

13         v.                                    ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15

16              Defendant.

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for Child's Insurance Benefits under Title II of the

20   Social Security Act ("the Act"), 42 U.S.C. § 402(d),[1] and for Supplemental Security Income

21   ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.[2]  For the reasons that follow, the

22

23   _____

     [1]  Disabled child's insurance benefits are paid to the qualified "child . . . of an individual entitled
24   to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured
     individual," if the child is 18 years of age, or older, and has a disability that began before she
25   turned 22 years old.  42 U.S.C. § 402(d)(1)(B)(ii); 20 C.F.R. § 404.350(a)(5); Moore v. Comm'r
     of Soc. Sec. Admin., 278 F.3d 920, 925 (9th Cir. 2002).
26   [2]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept.
     of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003)
27   ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of
     benefits for aged, blind, or disabled individuals, including children, whose income and assets fall
28   below specified levels . . .").

                                                  1

1    court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-

2    motion for summary judgment.

3                                    I.   PROCEDURAL BACKGROUND

4            Plaintiff applied for child's insurance benefits on June 13, 2011.  Administrative Record

5    ("AR") 102 (Exh. 1A).[3]  Plaintiff applied for supplemental security income on June 29, 2011.

6    AR 270 (Exh. 1D).  The disability onset date for both applications was alleged to be Sept-

7    ember 1, 2010.  The applications were disapproved initially, AR 102-111 (Exh. 1A), 112-121

8    (Exh. 2A), and on reconsideration, AR 125-35 (Exh. 5A), AR 136-46 (Exh. 6A).  On August 29,

9    2012, and February 25 and September 10, 2013, ALJ Plauche F. Villere Jr. presided over three

10   hearings on plaintiff's challenge to the disapprovals.  AR 68-101 (August 29, 2012), 53-67

11   (February 25, 2013), 35-52 (September 10, 2013).  Plaintiff was present at each hearing and

12   testified at the August 29, 2012 hearing.  She was represented by attorney Rick Peasley at each

13   hearing.  Lisa Suhonos (vocational expert), Charles Wiseman (medical expert), and Robin

14   McDevot (psychological expert), testified at the February 25, 2013 hearing.  James Graham

15   (vocational expert), and Faren Akins (psychological expert), testified at the September 10, 2013

16   hearing.[4]

17           On October 31, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not

18   disabled" under Section 223(d) of Title II of the Act, 42 U.S.C. § 423(d), and

19   Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 16-29 (decision).

20   On August 1, 2014, after receiving additional evidence, the Appeals Council denied plaintiff's

21   request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social

22   Security.  AR 1-5 (decision and additional exhibit).

23

24   _____
     [3]  The AR is electronically filed at ECF Nos. 12-3 to 12-12 (AR 1 to AR 729).

25   [4]  The ALJ makes no reference to any of the testimony taken at the February 25, 2013 hearing,
     except to state at the beginning of the September 10, 2013 hearing: "What happened last time we

26   had some inaccurate information and so that's why the testimony was invalid and so, we're going
     to try it one more time."  AR 37.  Neither party refers to the substance of any of that testimony

27   either, and plaintiff seems to agree that the testimony adduced there was "invalid."  See ECF
     No. 15 at 8.  The court accordingly will not consider any testimony taken at that hearing.

28

1        Plaintiff filed this action on September 26, 2014.  ECF No. 1; <u>see</u> 42 U.S.C. §§ 405(g),

2   1383c(3).  The parties' cross-motions for summary judgment, based upon the Administrative

3   Record filed by the Commissioner, have been fully briefed.  ECF Nos. 12 (AR), 15 (plaintiff's

4   summary judgment motion), 18 (Commissioner's summary judgment motion), 19 (plaintiff's

5   reply).

6                     II.  FACTUAL BACKGROUND

7        Plaintiff was born on October 29, 1992, and accordingly had not attained the age of 22 as

8   of September 1, 2010, the alleged onset date of her disabilities.  AR 21.  Plaintiff has a high

9   school education, and can communicate in English.  AR 27.

10                   III.  LEGAL STANDARDS

11       The Commissioner's decision that a claimant is not disabled will be upheld "if it is

12  supported by substantial evidence and if the Commissioner applied the correct legal standards."

13  <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

14  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  <u>Andrews</u>

15  <u>v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

16       Substantial evidence is "more than a mere scintilla," but "may be less than a

17  preponderance."  <u>Molina v. Astrue</u> , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

18  evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v.</u>

19  <u>Perales</u>, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

20  record can constitute substantial evidence, only those 'reasonably drawn from the record' will

21  suffice."  <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

22  Although this court cannot substitute its discretion for that of the Commissioner, the court

23  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

24  evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Secretary of HHS</u>,

25  846 F.2d 573, 576 (9th Cir. 1988); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985) ("The

26  court must consider both evidence that supports and evidence that detracts from the ALJ's

27  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

28  ////

1    "The ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

3    Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of

4    which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

5    278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

6    ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

7    v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

8    2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

9    evidence that the ALJ did not discuss").

10        The court will not reverse the Commissioner's decision if it is based on harmless error,

11   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

12   ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

13   (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

14   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

15                              IV.  RELEVANT LAW

16        Child Disability Insurance Benefits and Supplemental Security Income are available for

17   every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).

18   Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a

19   medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137,

20   140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A),

21   1382c(a)(3)(A)).

22        The Commissioner uses a five-step sequential evaluation process to determine whether an

23   applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);

24   Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation

25   process to determine disability" under Title II and Title XVI).  The following summarizes the

26   sequential evaluation:

27        Step one: Is the claimant engaging in substantial gainful activity?  If
     so, the claimant is not disabled.  If not, proceed to step two.

28

                                       4

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

1.  Born on October 29, 1992, the claimant had not attained age 22 as of September 1, 2010, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2.  [Step 1] The claimant has not engaged in substantial gainful activity since September 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  [Step 2] The claimant has the following severe impairments: major depressive disorder, bipolar disorder, and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

5

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. [Preparation for Step 4]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is able to understand, remember, and carry out simple to mildly complex tasks.

6. [Step 4] The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. [Step 5] The claimant was born on October 29,1992 and was 17 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2010, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

AR 21-29.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 223(d) of Title II of the Act, 42 U.S.C. § 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 29.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ committed the following legal errors: (1) he incorrectly weighed the medical evidence in the record; and (2) he wrongly discredited the testimony of plaintiff and her mother.  Plaintiff further alleges that the following findings of the ALJ are not supported by substantial evidence: (1) that plaintiff does not meet or equal Listings ¶ 12.04

6

1   (affective disorder);[5] and (2) that plaintiff can perform simple, unskilled work.

2        A.   <u>Claimed Legal Errors</u>

3           1.   <u>Weighing medical evidence</u>

4   Plaintiff argues that the ALJ erred in considering the medical evidence (a) by discounting

5   the conclusions of plaintiff's treating physician, Benjamin Yu, M.D., (b) by failing to mention

6   what weight he gave to Ms. Laura Owens, whom she refers to as her "treating psychologist,"

7   (c) by failing to give "little weight" to the opinions of (i) the consulting examiner Deborah

8   Schmidt, Ph.D., (ii) the "State Agency psychologist," and (iii) the testifying psychological expert,

9   Faren R. Akins, Ph.D., and (d) failing to accord greater weight to the opinion of Eugene Roeder,

10  Ph.D., over that of Dr. Schmidt.

11          a.   <u>Benjamin Yu, M.D.</u>

12  Dr. Yu was plaintiff's treating psychiatrist who saw plaintiff from September 24, 2010

13  through June 10, 2011.  AR 461-70 (Exh. 5F).  Dr. Yu completed an "Initial Psychiatric History

14  and Examination," and kept "Progress Notes."  As the ALJ observed, Dr. Yu diagnosed plaintiff

15  with Attention-Deficit Hyperactivity Disorder ("ADHD"), and major depressive disorder

16  ("MDD"), assessed her GAF at 55, and prescribed medication.  AR 470.  As the ALJ further

17  observed, Dr. Yu's progress notes report progressive improvement with each visit.[6]

18  On July 27, 2011, Dr. Yu completed a Sierra College form entitled "Disabled Student

19  Programs & Services Verification of Qualifying Conditions."  AR 686 (Exh. 20F).  The form

20  indicates that it is intended to help determine whether the student "may be eligible for special

21  services."  Under "Functional/Educational Limitations," Dr. Yu checked off Test Taking,

22  Memory, Poor Concentration, Problem Solving, Note Taking, Cognitive Processing, and Easily

23

24    [5]   <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").
    [6]   "Pt has felt better on these doses, yet has been more depressed with the restrictions placed on

25  her as well as her financial obligations."  AR 465 (October 13, 2010).  "Pt has felt better on these
    doses, feels her mood has improved and has been socializing well."  AR 464 (November 12,

26  2010).  "Pt has felt well, discussed increased trust at home and a new boyfriend."  AR 463
    (December 16, 2010).  "Patient has been doing well, discussed upcoming high school

27  [graduation]."  AR 462 (May 18, 2011).  "Patient has been doing well, discussed applying for
    disability."  AR 461 (June 10, 2011).

28

1   Distracted.  Id.  The form does not indicate whether the limitations indicated were mild, moderate

2   or severe, and there are no notes from Dr. Yu indicating the severity level.  In addition, the form

3   makes reference only to the ADHD diagnosis, and does not refer to any diagnostics or treatment

4   notes that supported the checked-off items.

5        The ALJ gave "little weight" to Dr. Yu's July 27, 2011 assessment.  AR 26.  In

6   explanation, the ALJ states that the assessment is "not supported by the medical records."  AR 26.

7   Specifically, Dr. Yu's "notes indicate the claimant is fairly stable, and her symptoms are under

8   control with the medication she is taking."  Therefore, he concludes, the assessment "is not

9   consistent with his treating notes, his treatment to the claimant, or the medical record as a whole."

10  AR 26.

11       The ALJ was correct to give little weight to the assessment.  Dr. Yu's initial report and his

12  progress notes make *no* reference to any of the specific limitations – all cognitive in nature – that

13  are addressed in his assessment.  See AR 460-70 (Exh. 5F).  Moreover, Dr. Yu makes no

14  reference, anywhere, to any medical records, diagnostics or assessments that address the

15  limitations he checked off on the Sierra College form.  While Dr. Yu's treatment notes are a part

16  of the record, none of them make any reference to the issues checked off on the Sierra College

17  form.  AR 461-70.  Accordingly, this "opinion" is simply a checked-off set of conclusions

18  unsupported by any medical evidence.  The assessments come out of nowhere, and cannot be

19  relied upon to make a disability determination.  "The ALJ need not accept the opinion of any

20  physician, *including a treating physician*, if that opinion is brief, conclusory, and inadequately

21  supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)

22  (emphasis added).

23                    b.  Laura Owens

24       Plaintiff asserts that the ALJ erred by failing to mention what weight he gave to what he

25  describes as the "opinion" of Laura Owens, whom plaintiff describes as a "treating school

26  psychologist" or the "treating psychologist" (AR 509, 538-39 (Exh. 8F)).  ECF No. 15 at 18.  Ms.

27  Owens is a School Psychologist (AR 509, 523), and as such, she is an "acceptable medical

28  source."  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  However, as discussed below, she was not

1   plaintiff's treating psychologist, and she offered no opinion.

2       Plaintiff argues that the ALJ should have given "great significant weight" to Dr. Owens'

3   statement (AR 509) that plaintiff "has Bi-Polar II and ADHD that were agreed to be limiting her

4   alertness and vitality and affecting her academic performance to the degree that she cannot

5   progress in general education without specialized academic instruction and counseling support."

6   AR 509.  This statement, plaintiff argues, shows that plaintiff "is not capable of independent, full-

7   time work of any kind."  ECF No. 15 at 18.

8       The ALJ did not err, because Ms. Owens did not offer an opinion.  The statements that

9   Ms. Owens made at AR 509, 538-39 do not purport to be her opinions, and they do not appear to

10  be such.  Rather, they summarize what others had to say about plaintiff.  Thus, Ms. Owens's

11  statement that plaintiff's diagnoses "*were agreed to be* limiting her alertness and vitality," does

12  not even purport to be Ms. Owens's opinion, but only a summary of the conclusion that others

13  had reached.  The same is true for the report which Ms. Owens "compil[ed]" at AR 523-39.  Even

14  if those summaries and compilations could be considered opinions, there is nothing in them that

15  opines on whether plaintiff has an impairment that meets or equals anything in the Listings, and

16  nothing that opines on what work plaintiff could perform given her functional limitations.

17  Rather, both statements are focused on what services the school can provide to enable plaintiff to

18  succeed in school.

19      Equally important, there is nothing in the record to indicate that Ms. Owens was plaintiff's

20  "treating psychologist."  The statements plaintiff cites give no indication of this.  See AR 509,

21  538-39.  The remainder of the cited exhibit shows that Ms. Owens's role was that of an assessor,

22  not a treating psychologist.  The record indicates that plaintiff received counseling from "School

23  Nursing Services" (AR 516), "School based counseling" (AR 517), and "private outside therapy"

24  (AR 517), but there is no indication that Ms. Owens provided any of that counseling.  Indeed,

25  there is nothing in the record to indicate that Ms. Owens was even an examining psychologist, as

26  there is no indication that she ever met or examined the plaintiff.  To the contrary, the record

27  indicates that Ms. Owens' role was to assess the behaviors "observed by qualified educational

28  staff in education or other settings" (see AR 514), rather than to examine or treat plaintiff.  Even

1  the "Student Interview" referenced in the exhibit does not indicate that the interview was

2  conducted by Ms. Owens.  See AR 525.  Accordingly, plaintiff is mistaken in arguing that these

3  compilations should be given the "great" or "controlling" weight she argues should be given a

4  treating physician's opinion.

5                                c. Deborah Schmidt, Ph.D.

6          After the first ALJ hearing (August 29, 2012), the ALJ requested a functional capacity

7  evaluation.  See AR 705 (Exh. 23F).  The evaluation was provided by Deborah Schmidt, Ph.D.,

8  after she had conducted an examination of plaintiff and administered a battery of tests.

9  AR 706-14.  As plaintiff notes, however, she did not review any of plaintiff's medical records.

10  AR 709.  On May 9, 2013, Dr. Schmidt reported out her results and completed an evaluation.  Her

11  evaluation was that plaintiff had moderate impairment in her ability to understand and remember

12  complex instructions, and that she otherwise was not impaired or had only a mild impairment.

13  AR 706-07.  Plaintiff argues that this is not substantial evidence, and that it should be accorded

14  "little weight" because Dr. Schmidt "only had one brief encounter" with plaintiff.  ECF No. 15

15  at 19.

16          Plaintiff's argument is contrary to the facts and the law.  Whatever plaintiff might mean

17  by a "brief encounter," the record shows that Dr. Schmidt conducted an independent examination

18  of the plaintiff at the request of the ALJ, administered a battery of psychological tests on the

19  plaintiff, and wrote a comprehensive report setting out her findings and conclusions.  Contrary to

20  plaintiff's unsupported statement, Dr. Schmidt's opinion thus constitutes "substantial evidence."

21  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Dr. Schatz's [an examining

22  physician] opinion alone constitutes substantial evidence, because it rests on his own independent

23  examination of Tonapetyan").

24          Plaintiff asserts that the lack of medical records is another reason to give Dr. Schmidt's

25  opinion little weight, arguing specifically that Dr. Schmidt acknowledged "that she performed her

26  exam of Ms. Hernandez with no records to review and that the presence of academic records may

27  have helped better evaluate Ms. Hernandez's intellectual capabilities.  (AR 709, 713)."  Plaintiff

28  offers no authority for his view that the court should discount the opinion of an examining

1    physician who examined plaintiff upon the specific request of the ALJ, who administered a

2    battery of tests, and who wrote a comprehensive report of her clinical findings, but who did not

3    have access to plaintiff's other medical records or her academic records.

4          In fact, the absence of academic records cuts against plaintiff's position in this case.  If the

5    absence of academic records had any effect on Dr. Schmidt's report, it was to cause Dr. Schmidt

6    to *under*-estimate plaintiff's intellectual abilities.  See AR 712 (plaintiff's scores "could have

7    been negatively impacted by the fact that she tended to give up easily on test items and did not

8    appear to put maximum effort into the testing").  However, even using the (possibly) artificially

9    lower test scores, Dr. Schmidt concluded that plaintiff had no functional impairments, or only

10   "mild" functional impairments, except for a "moderate" functional impairment in her ability to

11   understand and remember "complex" instructions.  AR 706.

12         In sum, considering Dr. Schmidt's thorough and recent examination and testing of

13   plaintiff, the ALJ did not err in according her report "great weight."  See AR 26.

14                          d.  State Agency psychologist

15         Citing Exhibit 6A, the ALJ gave "great weight" to the "State Agency psychologist"

16   assessment that plaintiff "could perform simple repetitive tasks."  AR 26.  Plaintiff argues that

17   this was error, and that this assessment was not substantial evidence because that psychologist

18   "only had one brief encounter" with plaintiff.  ECF No. 15 at 19.  Exhibit 6A contains the

19   assessment made by Preston Davis, Psy.D., on plaintiff's request for reconsideration of the denial

20   of her Title XVI claim by the state agency.[7]  AR 136-46.  According to Dr. Davis's report, he

21   ////

22   ////

23

24   ────────────────────
     [7]  Exhibit 6A includes the work of Dr. Davis and Mikhail Bargan, M.D.  Neither plaintiff nor the
     Commissioner specify which doctor they have in mind, but the court concludes that both parties
25   must be referring to the assessments made by Preston Davis, Psy.D.  Also, the court notes that
     Exhibit 6A refers only to the reconsideration of plaintiff's *Title XVI* claim, and that the ALJ
26   makes no reference to Exhibit 5A, which contains the assessments regarding plaintiff's
     reconsideration of the denial of her *Title II* child disability benefits claim by the state agency.
27   However, Exhibit 5A contains the same information and assessments as Exhibit 6A, and so the
     court finds no error in the ALJ's failure to mention Exhibit 5A.

28

1    reviewed the "pertinent MER" (medical evidence of record) in the patient's file.[8]  AR 141.  The

2    medical evidence of record he considered is laid out in the administrative record.  See AR 137-40

3    ("Evidence of Record").  To understand Dr. Davis's assessment, a look at what preceded it is

4    warranted.

5            On August 15, 2011, Tim Schumacher, Ph.D. made the initial psychological assessment of

6    plaintiff.  AR 116-22.  Dr. Schumacher reviewed the medical evidence of record.  That evidence

7    is set forth at AR 113-15 ("Evidence of Record").  He concluded that plaintiff could "carry out

8    routine vocational assignments."  AR 116.  His residual functional capacity evaluation found that

9    plaintiff was "moderately limited" in several areas, and "not significantly limited" in the rest.

10   AR 118-20.  Dr. Schumacher concluded that plaintiff could not carry out "difficult-detailed 3 to 4

11   step work duties over extended periods," but that she could "carry out routine 1 to 2 step

12   assignments for up to 2 hr intervals . . .."  AR 119.  He also concluded that plaintiff's limitations

13   prevented her from "interacting closely with the general public," but that she could "engage in

14   routine contacts with coworkers and employers in settings where major collaboration with others

15   is not involved."  AR 119.

16           Returning to Dr. Davis, that doctor then concluded that the medical evidence of record

17   supported Dr. Schumacher's initial determination, and that the new medical evidence of record

18   did nothing to change that determination.  AR 141 ("New MER did not change the Y

19   determination").[9]  He therefore "adopted" the prior conclusion that plaintiff could carry out

20   "simple wk [work] tasks w/limited GP [general public] contact."  AR 141.

21           There is nothing in the record that indicates that Dr. Davis had even "one brief encounter"

22   with plaintiff.  To the contrary, the record indicates that Dr. Davis was a non-examining

23   psychologist who based his opinion entirely on the medical evidence of record considered by the

---

[8]  The Social Security Administration helpfully provides a list of acronyms in the Program
25   Operations Manual System ("POMS"), its "internal agency document used by employees to
process claims."  Carillo-Yeras v. Astrue, 671 F.3d 731, 735 (9th Cir. 2011).  See
26   https://secure.ssa.gov/poms.nsf/lnx/0204440001 (last visited by the court on February 25, 2016).
[9]  As best the court can tell, Dr. Davis uses the terms "Y" and "Y Psychologist MC" to refer to the
27   Psychological Consultant.  "MC" refers to Medical Consultant.  See, e.g.,
https://secure.ssa.gov/poms.nsf/lnx/0424501001 (last visited by the court on February 25, 2016).

28

initial psychological consultant, and whatever new medical evidence of record was obtained since

that determination.  Plaintiff's objection – even if it were true – provides no legal basis for

rejecting the opinion of a non-examining psychologist whose opinion is based upon the medical

record in plaintiff's file.  To the contrary, reviewing those records is precisely what a non-

examining psychologist is supposed to do.[10]

"The weight afforded a non-examining physician's testimony depends 'on the degree to

which they provide supporting explanations for their opinions.'"  Ryan v. Comm'r of Soc. Sec.,

528 F.3d 1194, 1201 (9th Cir. 2008); 20 C.F.R. §§ 404.1527(c)(3) ("because nonexamining

sources have no examining or treating relationship with you, the weight we will give their

opinions will depend on the degree to which they provide supporting explanations for their

opinions"), 416.927(c)(3) (same).  In this case, Dr. Schumacher's opinion, as adopted by

Dr. Davis, discusses the underlying evidence Dr. Schumacher considered (AR 115-16), and fully

explains his residual functionality conclusions (AR 119).

The court can find no error in according Dr. Davis's opinion "great weight."

e.  Faren R. Akins, Ph.D.

On September 10, 2013, the ALJ held the third, and last, hearing on plaintiff's claims.

AR 35-52 (transcript).  Faren R. Akins, Ph.D. was called to testify as a "psychological expert."

AR 37-40.[11]  After reviewing the reports of Drs. Schmidt (Exh. 23F) and Yu (Exh. 20F),

Dr. Akins testified as follows:

> The record as a whole does not support that there is a listing met or
> equaled.  The apron of several of the listings could be said to be met
> but the severity of the symptoms don't trigger two areas that are
> marked in impairment level under the B term. . . .

---

[10] "When a State agency medical or psychological consultant makes the determination together
with a State agency disability examiner at the initial or reconsideration level of the administrative
review process . . . he or she will consider the evidence in your case record and make findings of
fact about the medical issues, including, but not limited to, the existence and severity of your
impairment(s), the existence and severity of your symptoms, whether your impairment(s) meets
or medically equals the requirements for any impairment listed in appendix 1 to this subpart, and
your residual functional capacity."  20 C.F.R. § 404.1527(e)(1)(i);  20 C.F.R. § 416.1527(e)(1)(i)
(same).
[11] Plaintiff offered no objection to Dr. Akins's qualifications as an expert.  AR 37.

1
2
3
4
5

> So, in work environments where there would be an issue of complex instructions or directions to be followed or complex decisions to be made, those would be ones where the claimant would have a marked impairment.   Otherwise, the remaining categories would either be mild or possibly moderate at best but there wouldn't be anything marked outside of the couple of questions that are usually looked at for complex instructions or decision-making.

6   AR 39-40.

7          Plaintiff argues Dr. Akins's opinion is not "substantial evidence" because he did not

8   examine plaintiff, and only reviewed her records.  ECF No. 15 at 19.  This argument ignores the

9   settled law of this circuit.  It is true that "[t]he opinion of a nonexamining physician cannot *by*

10  *itself* constitute substantial evidence that justifies the rejection of the opinion of either an

11  examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995)

12  (emphasis added); Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194, 1202 (9th Cir. 2008)

13  (same).  Also, the opinion of a non-examining physician "with nothing more," is not substantial

14  evidence.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).

15         However, that is not the situation here.  First, Dr. Akins is *explaining* the meaning of the

16  treating physician's statement, not contradicting it.  Second, Dr. Akins did not offer a bare

17  opinion, "without more."  Rather, Dr. Akins relies on the most recent consultative examination

18  available at the time, authored by Dr. Schmidt (Exh. 23F), and the "opinion" of the treating

19  physician, Dr. Yu (Exh. 20F).  As the court has already determined, Dr. Schmidt's report is

20  "substantial evidence."  Accordingly, Dr. Akins was entitled to offer an opinion based upon a

21  review of that report, and the ALJ was entitled to adopt Dr. Akins's opinion.  See Andrews v.

22  Shalala, 53 F.3d 1035, 1037 (9th Cir. 1995) ("[w]e hold that the Secretary was entitled to adopt

23  the opinion of the nonexamining medical advisor, who was present at the hearing and testified").

24         The court can find no error in the ALJ's according "significant weight" to Dr. Akins's

25  opinion.  See AR 27.

26                              f.  Eugene Roeder, Ph.D.

27         Dr. Roeder examined plaintiff on March 10, 2014 (after the ALJ had rendered his

28  decision).  See AR 725-29 (Exh. 25F).  According to Dr. Roeder's report, plaintiff had been

14

1    referred to him "for a confidential psychological evaluation under Section 1017 of the Evidence

2    Code . . .."  AR 725.  Section 1017, in turn, relates to psychotherapist exams that are done "in

3    order to provide the [defense] lawyer with information needed so that he or she may advise the

4    defendant whether to enter or withdraw a plea based on insanity or to present a defense based on

5    his or her mental or emotional condition."  Cal. Evid. Code § 1017.  There is no indication in the

6    report or the statute that this examination was undertaken to determine whether plaintiff was

7    "disabled" for purposes of Social Security benefits, or for any other purpose.

8          Dr. Roeder reviewed plaintiff's criminal history documents, but did not review any

9    medical records.  AR 725.  He conducted a clinical interview and administered two tests on

10   plaintiff, only one of which he ultimately concluded was valid.  Id.  Dr. Roeder determined that

11   according to the first test, Shipley Institute of Living Scale, plaintiff had an IQ of 78, which

12   "indicates she would be capable of independent living," but that "she is likely to experience

13   challenges with higher-order judgment and decision-making . . .."  AR 727.  Dr. Roeder found

14   that the results of the second test, the Minnesota Multiphasic Personality Inventory-2-RF (MMPI-

15   2-RF), were "invalid and uninterpretable."  AR 727.  He concluded that "her limited intellectual

16   capabilities are overshadowed by her severe psychiatric problems, as she acknowledges hearing

17   voices, believes she has multiple personalities, and objective psychological testing is consistent

18   with someone who would receive the diagnosis Psychotic Disorder."  AR 728.  He also states,

19   apparently contradicting himself, that plaintiff "does not appear to be capable of independent

20   living."  AR 728, 729.

21         Plaintiff argues that this opinion should be given greater weight than Dr. Schmidt's.

22   Surprisingly, the Commissioner argues that "[i]t would be improper to consider this opinion as

23   part of this application" because it was submitted after the ALJ rendered his decision.  ECF

24   No. 18 at 8-9 & 9 n.2.  The Commissioner's position is surprising, because the Appeals Council

25   was entitled to consider this evidence,[12] and it *did* consider Dr. Roeder's opinion in reaching its

26   conclusion that the ALJ's decision should be upheld.  AR 1, 2, 4 (Dr. Roeder's opinion "does not

27

28   _____
     [12]  See 20 C.F.R. §§ 404.970(b), 416.1476(b)(1).

1    provide a basis for changing the Administrative Law Judge's decision").  Moreover, this court is

2    required to consider Dr. Roeder's opinion so long as it relates to the period of the claimed

3    disability.  <u>Brewes v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1163 (9th Cir. 2012) ("we

4    hold that when the Appeals Council considers new evidence in deciding whether to review a

5    decision of the ALJ, that evidence becomes part of the administrative record, which the district

6    court must consider when reviewing the Commissioner's final decision for substantial

7    evidence").[13]

8         Plaintiff does not explain why Dr. Roeder's opinion should change the ALJ's decision,

9    nor does any such reason appear from the record.  Dr. Roeder examined plaintiff to determine if

10   her intellectual or mental condition would warrant changing her plea, a matter having no obvious

11   connection to her ability to engage in substantial gainful employment.  The report contradicts

12   itself by stating both that plaintiff is capable of independent living, and that she is not.  The report

13   states that plaintiff's IQ is 78, which is *consistent* with the finding of Dr. Schmidt, to which the

14   ALJ correctly gave great weight.  Finally, plaintiff objects that the ALJ or Appeals Council did

15   not give greater weight to the report's finding that plaintiff has "'severe psychiatric problems.'"

16   ECF No. 15 at 20.  However, the ALJ *did* find that plaintiff has "severe" psychiatric impairments,

17   namely, "major depressive disorder, bipolar disorder, and attention deficit hyperactivity disorder

18   (ADHD)."  AR 21.  The ALJ also found that these impairments did not meet or equal the severity

19   of the Listings, and he incorporated those impairments into his residual functional capacity

20   assessment.  Plaintiff does not explain how Dr. Roeder's report would have changed those

21   conclusions.

22        The court can find no error in the Appeals Council's determination that Dr. Roeder's

23   report does not warrant a change in the ALJ's decision.

24   ////

25   ////

26

27   ─────────────────
     [13]  Nothing in Dr. Roeder's opinion indicates that the issues he identifies arose after the date of
     the ALJ's decision.

28

1                 2. <u>Crediting testimony</u>

2         Plaintiff asserts that the ALJ erred in discrediting her and her mother's testimony.  ECF

3 No. 15 at 21-22.

4                a. <u>Plaintiff's testimony</u>

5         Plaintiff testified at the August 29, 2012 hearing.  AR 71-100.  Plaintiff also completed a

6 self-assessment.  AR 296-303 (Exh. 3E).  In challenging the ALJ's decision, plaintiff cites her

7 own testimony that she goes into "a downward spiral" when she experienced stress, that her low

8 level of functioning worsens her stress, and that she has only had one job that lasted three weeks.

9 ECF No. 15 at 9, 19, 24 (citing AR 78-79, 90, 91, 100).[14]  Plaintiff's testimony supports her claim

10 that she has cognitive functioning impairment.  Among other things, she did not pass a single

11 class in college, despite being in the disabled students program.  However, her testimony does not

12 indicate that she has "marked" impairments in any areas, with the possible exception of

13 concentration, persistence and pace.  She reported that her medical conditions affect her memory

14 and concentration.  AR 301.  She reported no difficulties in personal care or taking care of her

15 pets, although she needs reminders to take her medicine.  AR 297-98.  She reports no problems

16 with meal preparation, house work, getting around, shopping, paying bills, or social activities.

17 AR 298-300.  She reports that she is "OK" at following written instruction, follows spoken

18 instructions "not very well," and does not finish what she starts.  AR 301.  She gets along with

19 authority figures, but doesn't handle stress or changes in routine well.  AR 302.

20         The ALJ considered and gave some credit to the plaintiff's testimony.  After citing her

21 testimony, the ALJ determined that that plaintiff's impairments "pose more than minimal

22 limitations, they are severe."  AR 22.  The ALJ further considered plaintiff's testimony in

23 considering her residual functional capacity.  AR 23-27.  The ALJ's residual functional capacity

24 incorporates plaintiff's low level of functioning, and her depression.  In considering jobs plaintiff

25 could perform (which conclusion was based on the testimony of the vocational expert), the ALJ

26

27     [14]  Plaintiff makes no reference to her self-assessment.  The court does not know what portion of it plaintiff thinks the ALJ improperly failed to credit.

28

1   acknowledged plaintiff's lack of work history.  AR 27.  Thus, the ALJ did not entirely discredit

2   plaintiff's testimony.  Rather, the ALJ found that her testimony about the "intensity, persistence

3   and limiting effects" of her symptoms were not "entirely" credible, for the reasons he went on to

4   explain.  AR 24.

5                              b.  Mother's testimony

6          Plaintiff's mother did not testify at any of the hearings before the ALJ.  She did provide a

7   Third Party Function Report.  See AR 304-12 (Exh. 4E).  The ALJ considered this report.  AR 24.

8   However, plaintiff does not identify what assertions in that report (or any other evidence) that

9   ALJ should have found credible but failed to.  The court's review of that report shows that it is

10  consistent with plaintiff's assertion that she is limited in cognitive functioning, an impairment that

11  the ALJ considered and included in his residual functional capacity assessment.  Plaintiff offers

12  no clue about what part of the mother's testimony she feels was improperly discredited, and does

13  not explain how this report should have changed the ALJ's decision.

14         The court can find no error in the ALJ's consideration of the mother's testimony.

15         B.  Alleged Lack of Substantial Evidence

16            1.  Listings ¶ 12.04

17         Plaintiff argues that the ALJ's determination that her impairments do not meet or

18  medically equal the severity of Listings ¶ 12.04 (Affective Disorder), is not supported by

19  substantial evidence.  ECF No. 15 at 22-23.  In order to meet or medically equal that Listing,

20  plaintiff's symptoms must result in two of the difficulties listed at Listings ¶ 12.04B.[15]  Plaintiff

21  asserts that she has (1) marked restriction of activities of daily living, and (2) marked difficulties

22  in maintaining concentration, persistence or pace.  ECF No. 15 at 23.  In support, plaintiff cites

23  "AR 532-36 and 686," without explanation.  However the cited pages of the administrative record

24  do not appear to address the issue of whether plaintiff meets or equals Listings ¶ 12.04B.

25         The first set of pages, AR 532-36, contain something called "Behavior Assessment

26

27  _____

[15]  In the alternative, plaintiff must meet the requirements of 12.04C, but she does not argue that
she meets those requirements.

28

                                         18

System" rating scales, and are part of a report compiled by Ms. Owens.  These do not even

purport to be medical assessments.  Instead, they are based upon a "Self Report" by plaintiff

(AR 531-32), "Selena's mother's responses" (AR 533), "a Colfax High School math teacher"

(AR 534), and "the regular education drama teacher" (AR 535).  Plaintiff does not direct the

court's attention to any particular rating scale within these pages.  However, the court notes that

plaintiff's mother rates her "Activities of Daily Living" at the "Clinically Significant" range,

indicating "a high level of maladjustment."  AR 533.  This is the only "evidence" that even

suggests that plaintiff could have a marked impairment in activities of daily living.  However, it is

"based upon" responses given by Selena's mother, and there is no indication of what questions

prompted the responses, nor that there is any medical evidence that supports the assessment.  In

short, plaintiff identifies no medical evidence or opinions that would support her claim that she

has a "marked" impairment in the activities of daily living.

Plaintiff's second citation, AR 686, is to Dr. Yu's assessment for Sierra College.  Plaintiff

cites this as evidence that she has a "marked" limitation in the area of concentration, persistence

and pace.  As discussed above, the ALJ did not err in giving this report "little weight."  It was not

supported by any medical evidence, and did not indicate the severity level of the impairments

listed.[16]

The court finds no error in the ALJ's determination that plaintiff did not meet or equal the

Listings.

2. Simple, unskilled work

Plaintiff cites "POMS 25025.00(1)(e)," and an exhibit to the brief of her hearing-level

attorney, to argue that she does not have the mental traits required for simple, unskilled work.

---

[16] Dr. Akins did testify that he interprets Dr. Yu's check-off form as indicating that plaintiff had a "marked" impairment in concentration, persistence and pace.  The court notes that while the ALJ relied on Dr. Akins's testimony, his decision did not make any reference this.  This was not error, as Dr. Yu's evaluation did not actually find that plaintiff had any "marked" impairments. In any event, even a single "marked" impairment is not enough to "meet or medically equal" Listings ¶ 12.04 (the Listings plaintiff claims she meets or equals), and the ALJ considered plaintiff's moderate or mild impairment in concentration, persistence and pace in the residual functional capacity assessment.

1   ECF No. 15 at 23-24.  The court assumes that plaintiff is referring to POMS DI 25020.010(B)(3),

2   which sets forth the "Mental Abilities Critical For Performing Unskilled Work," and lists the

3   items specified by plaintiff in her brief to this court and in the exhibit to her hearing-level brief.[17]

4       The Social Security Administration's Program Operations Manual System ("POMS"), is

5   "an internal agency document used by employees to process claims."  Carillo-Yeras, 671 F.3d

6   at 735; Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1072 (9th Cir. 2010) (same),

7   cert. denied, 563 U.S. 975 (2011).  POMS "does not impose judicially enforceable duties" on

8   either the court or the ALJ.  Lockwood, 616 F.3d at 1073.  However, "POMS may be 'entitled to

9   respect' under Skidmore v. Swift & Co., 323 U.S. 134 (1944), to the extent it provides a

10  persuasive interpretation of an ambiguous regulation."  Carillo-Yeras, 671 F.3d at 735.[18]

11      Plaintiff argues that she cannot perform the items listed in the POMS, and therefore the

12  ALJ's residual functional capacity finding was erroneous.  ECF No. 15 at 23-24.  In support,

13  plaintiff cites her "failed high school classes," her failure of all classes in college, and makes

14  general references to plaintiff's and her mother's testimony, unspecified "medical" and academic

15  records, and records from Dr. Yu and Ms. Owens.  ECF No. 15 at 24.  Plaintiff does not explain

16  why the ALJ should have considered these POMS factors separately from his residual functional

17  capacity evaluation, of which they are a part.  In any event, as discussed above, the ALJ

18  considered all these factors in concluding that plaintiff had a severe impairment that did not meet

19  or equal one of the Listings, and he included the limitations of her impairment in his residual

20  functional capacity assessment.  Moreover, plaintiff does not explain why failing grades in high

21  school or flunking out of college, even without a single passing college grade, prevents a person

22  from engaging in substantial gainful employment.

23

24  _____

    [17]  See https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited by the court on
25  February 25, 2016).  As best the court can tell there is no thing as "POMS 25025.00(1)(e)."
    [18]  It is not clear why plaintiff is even citing the POMS, as she does not assert that SSA employees
26  used the wrong procedures in processing her claim, nor does she allege that an SSA regulation is
    ambiguous.  Rather, she disagrees with the substantive result, namely the finding of non-
27  disability.

28

1    C.  Substantial Evidence

2        In fact, the ALJ's decision is supported by the substantial evidence discussed above.  The

3    report of Dr. Schmidt was based upon an examination of plaintiff which included administering

4    plaintiff a battery of tests.  Dr. Schmidt concluded that plaintiff had only mild or moderate

5    impairments.  The report of Dr. Davis (on plaintiff's request for reconsideration) was based upon

6    a review of the medical records and of Dr. Schumacher's assessment.  Dr. Schumacher's

7    assessment, in turn, was based upon his review of the medical evidence of record.  Both doctors

8    concluded that plaintiff could carry out simple work tasks so long as she had "limited" contact

9    with the general public, thus taking into account her intellectual and social limitations.  Dr. Akins

10   testified as a non-examining physician, and based his testimony upon the medical records of Drs.

11   Schmidt and Yu.  His testimony found that plaintiff may have a "marked" impairment in the area

12   of taking complex instructions, but that any other impairments were mild or moderate.

13       These opinions, and the in-person examinations and test results supporting them, are

14   substantial evidence supporting the ALJ's decision.

15                                      VII.  CONCLUSION

16       For the reasons set forth above, IT IS HEREBY ORDERED that:

17       1.  Plaintiff's motion for summary judgment (ECF No. 15), is DENIED;

18       2.  The Commissioner's cross-motion for summary judgment (ECF No. 18), is

19   GRANTED, and the decision of the Commissioner is AFFIRMED; and

20       3.  The Clerk of the Court shall enter judgment for defendant, and close this case.

21   DATED: March 7, 2016

22

23                                      ALLISON CLAIRE
                                        UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                                        21